**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-20352-GAYLES**

*In re*

**BORIS TARLO and**
**MARGARITA GOLKOVA,**

        **Debtors.**                        **Bankruptcy Case No. 17-24199-CLC**

_____ /

**BORIS TARLO and MARGARITA**
**GOLKOVA,**

        **Appellants,**

**v.**

**MICHAEL BERZOVKSY,**

        **Appellee.**

_____ /

**<u>ORDER</u>**

       **THIS CAUSE** comes before the Court on Appellants Boris Tarlo and Margarita Golkova's

Notice of Appeal. [ECF No. 1]. The Court has reviewed the parties' briefs and the record and is

otherwise fully advised. For the reasons discussed below, the United States Bankruptcy Court for

the Southern District of Florida's Order Granting Motion to Approve/Enforce Settlement

Agreement (the "Final Order"), [ECF No. 31-19], is affirmed.[1]

---

[1] The Appeal also seeks review of the Bankruptcy Court's non-final Order Granting-in-Part Motion to Approve/Enforce Settlement Agreement, [ECF No. 31-6], and Order Sustaining Objection to Debtors' Claim of Homestead Exemption, [ECF No. 31-7]. "Under general legal principles, earlier interlocutory orders merge into the final judgment, and a party may appeal the latter to assert error in the earlier interlocutory order." *Myers v. Sullivan*, 916 F.2d 659, 673 (11th Cir. 1990).

**BACKGROUND**

This bankruptcy appeal stems from the settlement of a lawsuit in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "State Court") between Appellants Boris Tarlo and Margarita Golkova ("Debtors") and Appellee Michael Berzovsky ("Creditor").

**I.      Litigation, Bankruptcy, and Settlement**

On January 22, 2009, Creditor filed an action against Debtors in State Court for breach of contract, fraudulent misrepresentation, and other claims relating to a condominium in Sunny Isles Beach, Florida (the "Property"). Eight years later and on the eve of trial, Debtors filed a Chapter 7 bankruptcy petition (the "Bankruptcy Case") where they claimed that the Property was protected from creditors under Florida's homestead exemption. [ECF No. 26 p. 36]. Creditor then filed (1) an adversary proceeding in the Bankruptcy Court seeking a determination of the non-dischargeability of Debtors' indebtedness to him (the "Adversary Proceeding") and (2) an objection to Debtors' claimed homestead exemption for the Property (the "Objection"). At the same time, Creditor asked the Bankruptcy Court to stay ruling on the Adversary Proceeding and Objection pending the conclusion of the State Court Action. The Bankruptcy Court permitted Creditor to proceed with the State Court Action but prohibited him from executing on any judgment obtained against Debtors without its approval. [ECF No. 31-3].

On May 10, 2022, the parties "resolved all of the issues" in the State Court Action and announced their settlement (the "Settlement Agreement") in open court before State Court Judge Barbara Areces (the "Hearing"). [ECF No. 31-5]. Creditor's counsel read into the record the following "essential terms and conditions" of the Settlement Agreement:[2]

---

[2] The Court uses the Bankruptcy Court's phrasing of the terms as set forth in the Final Order. [ECF No. 31-19]. Although this phrasing is not a verbatim recitation of the terms announced at the Hearing, the substance is the same and the parties have not objected to the Final Order's recitation of terms. *Compare* [ECF No. 31-19] *with* [ECF No. 35-1]. Rather, Debtors dispute whether the terms constitute a valid and binding agreement.

a.  Debtors would have three (3) payment options to satisfy their obligations to Creditor, as follows:

   i.   pay the sum of $260,000 in full and final settlement of all of Creditor's claims against Debtors within 120 days of the court-announced settlement (*i.e.* on or before September 7, 2022);

   ii.  pay the sum of $265,000 in full and final settlement of all of Creditor's claims against Debtors within 150 days of the court-announced settlement (*i.e.* on or before October 7, 2022); or

   iii. if the Property was under contract prior to the expiration of the 150-day final deadline (October 7, 2022), then Debtors would be entitled to an additional 30 days to close and pay Creditor the sum of $267,000.

b.  Within three (3) business days of execution of the Written Settlement Agreement, Debtors were to make an initial payment of $10,000 towards the above sums,[3] and provide to Creditor's counsel a fully executed quitclaim deed in recordable form, to be held in escrow by Creditor's counsel and not recorded provided that Debtors fully and timely complied with any and all of the payment requirements set forth above;

c.  Debtors waived any and all Florida homestead and constitutional protections *vis-à-vis* Creditor's claims/interests in the Real Property;

d.  Should Debtors fail or refuse to execute and deliver such quitclaim deed, the court shall have jurisdiction to either execute or appoint an appropriate attorney, or designee of Debtors to execute same. *Id.*;

e.  In the event Creditor took ownership of the Property by virtue of any default, by the recording of the quitclaim deed, or otherwise, Creditor shall be entitled to all of the equity in the Property in full and final satisfaction of the payment obligations set forth above, and would be entitled to the immediate issuance of a writ of possession and execution thereon;

f.  In the event of default in any of the payment obligations set forth above, Debtors would be entitled to notice by Federal Express to 17201 Collins Avenue, Unit 2807, Sunny Isles Beach, Florida, with notice by email to their counsel, and Debtors would be afforded three (3) business days to cure such default. Time was strictly of the essence with respect to all obligations imposed upon Appellants;

---

[3] When first announced, this term mandated that Debtors pay an initial payment of $10,000 within three days of the Hearing. On Debtors' counsel's objection, the parties agreed to change the term to require an initial payment of $10,000 within three business days of execution of a written settlement agreement. However, the terms with longer payment deadlines remained linked to the date of the Hearing.

g.      In the event [] any enforcement of the terms and conditions of the Settlement were required, the prevailing party shall be entitled to their reasonable attorney fees and costs at both the trial and all appellate levels; and,

h.      In the event Creditor took title to the [] Property, or in any way acquired ownership of the same, Creditor shall be obligated to pay off the existing first mortgage holder within a reasonable time, and not later than 45 days following the date Creditor acquired or took title to the property.

[ECF No. 31-19 at 3-4] (cleaned up). After Creditor's counsel announced each term, he polled Debtors, Creditor, and Debtors' counsel as to their consent.[4] They all agreed to each term.[5]

After the Hearing, Creditor's counsel provided Debtors' counsel with a written draft of the Settlement Agreement that was consistent with the terms announced in open court. Debtors' counsel responded by making material changes to the previously agreed-upon terms. The parties were ultimately unable to agree on a written draft of the Settlement Agreement, and in April 2023, Debtors reactivated the prosecution of the Adversary Proceeding by filing a motion to dismiss.

On June 18, 2024, Creditor moved the Bankruptcy Court to approve and enforce the Settlement Agreement. [ECF No. 31-4]. The Bankruptcy Court approved the Settlement Agreement, but deferred ruling on its enforcement pending a hearing. [ECF No. 31-6]. In October 2024, after an unsuccessful mediation,[6] Creditor served Debtors with a Notice of Default. [ECF No. 31-11]. Debtors failed to cure the default.

---

[4] Appellants and Appellee were sworn in as witnesses for the Hearing.

[5] After reading all of the essential terms, Creditor's counsel addressed Debtors and Creditor separately, stating "you have heard me read all of the essential terms and conditions, including those minor adjustments requested by your counsel. And we have went over each and every one of those essential terms and conditions [in] the presence of the court reporter . . . . I want to make certain, in similar fashion, that you agree to all of those essential terms and conditions. That you understand those essential terms and conditions and that you do not have any issues with respect to agreeing to those terms and conditions." [ECF No. 35-1]. Both Debtors and Creditor affirmed their agreement with the terms. *Id.*

[6] After finding the Settlement Agreement was valid and enforceable, the Bankruptcy Court ordered the parties to mediate.

On January 9, 2025, following a hearing, the Bankruptcy Court entered the Final Order finding (1) Debtors were responsible for the failure to document the Settlement Agreement and (2) Creditor did not actively prevent the parties from abiding by the agreed-upon terms. [ECF No. 31-19]. As a result, the Bankruptcy Court found that Debtors breached the Settlement Agreement and Creditor was entitled to elect, as a remedy, to have the Property conveyed to him. *Id.*

## II.     The Appeal

On January 23, 2025, Debtors filed their Notice of Appeal of the Final Order. Debtors argue that the Bankruptcy Court erred in (1) finding a valid settlement between the parties; (2) finding that Appellants breached the Settlement Agreement; (3) rejecting their defenses of laches, waiver, and estoppel; and (4) ordering the remedy of specific performance.

## LEGAL STANDARD

The district court has jurisdiction to hear appeals from final judgments and orders of bankruptcy courts pursuant to 28 U.S.C. § 158(a). "In reviewing bankruptcy court judgments, a district court functions as an appellate court." *Rush v. JLJ Inc.* (*In re JLJ Inc.*), 988 F.2d 1112, 1116 (11th Cir. 1993). The district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*, and it cannot make independent factual findings. *See Torrens v. Hood* (*In re Hood*), 727 F.3d 1360, 1363 (11th Cir. 2013); *Englander v. Mills* (*In re Englander*), 95 F.3d 1028, 1030 (11th Cir. 1996). Additionally, the Court reviews a bankruptcy court's approval of a settlement agreement for an abuse of discretion. *Christo v. Padgett*, 223 F.3d 1324, 1335 (11th Cir. 2000). "An abuse of discretion occurs where a bankruptcy court applies the wrong principle of law or makes clearly erroneous findings of fact." *In re Zadeh*, 772 F. App'x 837, 838 (11th Cir. 2019).

**DISCUSSION**

**I.      The Settlement Agreement is Enforceable**

To determine whether the Settlement Agreement is enforceable, the Court looks to Florida contract law.[7] *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999) ("the law of contracts governs the construction and enforcement of settlement agreements."). Under Florida law, "an objective test is used to determine whether a contract is enforceable." *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985). Under this test, the settlement must be "sufficiently specific and mutually agreeable" as to the material terms. *Perez v. ModivCare Inc.*, No. 1:24-CV-21517, 2024 WL 4252559, at *2 (S.D. Fla. Sept. 20, 2024) (quoting *Vision Palm Springs, LLLP v. Michael Anthony Co.*, 272 So. 3d 441, 444 (Fla. 3d DCA 2019)). Settlement agreements "are highly favored and will be enforced whenever possible." *Robbie*, 469 So. 2d at 1385.

A settlement agreement may be enforceable even if it is not reduced to writing. *See Vital Pharm. Inc., v. S.A.N. Nutrition Corp*, No. 06-60646, 2007 WL 1655421, at *6 (S.D. Fla. June 6, 2007) ("Execution of the settlement agreement is not a condition precedent to a settlement agreement[] but rather is merely a procedural formality."). Indeed, "settlements may exist and be enforced even though they are not signed by the parties[] or even reduced to writing at all." *In re Rolsafe Intern., LLC,* 477 B.R. 884, 902–03 (Bankr. M.D. Fla. 2012). *See also Clough Mktg. Servs., Inc. v. Main Line Corp.*, 313 F. App'x 208, 211 (11th Cir. 2008) (holding that an agreement stated on the record in front of a magistrate judge, detailing the material terms of the settlement, was binding). "Rather, courts look to traditional notions of offer and acceptance, and basic contract law, to determine whether an enforceable contract exists." *Vital*, 2007 WL 1655421, at 6. "The

---

[7] There is no dispute that Florida law governs. *See Clough Mktg. Servs., Inc. v. Main Line Corp.*, 313 F. App'x 208, 211 (11th Cir. 2008) ("The construction and enforcement of settlement agreements are governed by the contract law of the forum state.").

party seeking enforcement of a settlement agreement has the burden of establishing assent by the opposing party." *Id*.

The Bankruptcy Court did not abuse its discretion in finding that the Settlement Agreement is enforceable. As detailed in the Hearing transcript, Creditor's counsel read each detailed, essential settlement term into the record, including (1) the requirements of the Settlement Agreement, (2) contemplated defaults, and (3) the consequences of a breach. Creditor's counsel asked Debtors, Creditor, and Debtors' counsel whether they understood and agreed to each term before going on to the next term. Debtors and Creditor assented every time. As the Bankruptcy Court stated when it approved the Settlement Agreement, "[i]f there was a textbook example of the best way to confirm the terms of a settlement, this was it." [ECF  No. 31-6 at 4].

Though the parties later struggled to document the Settlement Agreement—a problem caused by Debtors' attempt to change the already agreed-upon terms—this does render the Settlement Agreement unenforceable. *See In re Rolsafe Intern.,* 477 B.R. at 902–03. Moreover, the Settlement Agreement did not mandate that it be reduced to writing to become binding.[8] Accordingly, the Court finds that the Bankruptcy Court did not abuse its discretion in finding that the Settlement Agreement is valid and enforceable.

## II.    Breach, Defenses, and Specific Performance

The Bankruptcy Court did abuse its discretion in finding that Debtors breached the terms of the Settlement Agreement. Debtors had three options under the Settlement Agreement to fulfill their obligations to Creditor: (1) pay him $260,000 by September 7, 2022; (2) pay him $265,000 by October 7, 2022; or (3) if the Property was under contract and closed by November 6, 2022, pay him $267,000. Debtors chose none of these options and have not paid Creditor any amount of

---

[8] Although one of the terms of the Settlement Agreement was not triggered until three days after the execution of a written agreement, this does not negate the parties' clear intent to enter into a binding agreement.

money. Creditor properly served Debtors with notice of default, and Debtors failed to cure. This is not a difficult case. The terms of the Settlement Agreement were clear, and Debtors failed to abide by them.

Moreover, the Bankruptcy Court did not abuse its discretion in finding that Debtors' waiver, estoppel, and laches defenses had no merit. Indeed, it was Debtors who created any delay by trying to materially alter the terms of the Settlement Agreement and reopening the Adversary Proceeding.

Finally, the Bankruptcy Court did not abuse its discretion in finding that Creditor is entitled to have the Property conveyed to him as the Settlement Agreement clearly provides for this option.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that the Order of the United States Bankruptcy Court for the Southern District of Florida Granting Motion to Approve/Enforce Settlement Agreement, [ECF No. 31-19], is **AFFIRMED**. This action shall be **CLOSED** for administrative purposes, and all pending motions are **DENIED as moot**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of March, 2026.

          DARRIN P. GAYLES
          UNITED STATES DISTRICT JUDGE